UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KAGON DUPLANTIS                                          CIVIL ACTION

VERSUS                                                          NO. 23-7141

ALLIED TRUST INSURANCE                         SECTION "R" (3)
COMPANY

## ORDER AND REASONS

Before the Court is defendant Allied Trust Insurance Company's ("Allied Trust") opposed[1] motion for partial summary judgment on plaintiff's bad faith claims.[2] The Court grants the motion in part and denies it in part.

## I.    BACKGROUND

The Court has reviewed the record and determines the undisputed facts are as follows.  This case arises out of damage to plaintiff Kagon Duplantis's residential property located at 3008 Sycamore Drive in Houma, Louisiana sustained during Hurricane Ida.[3]  Defendant Allied Trust insured plaintiff's property, covering up to $167,000 in damage to the principal dwelling, $3,340 in damage to other structures, $50,100 in damage to

---

[1]    R. Doc. 28.
[2]    R. Doc. 21.
[3]    *See* R. Doc. 1-1.

personal belongings, and $16,700 for additional living expenses ("ALE")
following loss of personal use.[4]

Plaintiff reported the hurricane damage to Allied Trust on August 31,
2021, and Allied Trust dispatched John Hodge, a field adjuster, to inspect
her property.  Hodge inspected the premises between September 9 and 12,
2021,[5] and completed and sent his claims estimate to Allied Trust on
October 14, 2021.[6]  The claims estimate identified the Replacement Cost
Value ("RCV") of the damage to the principal dwelling as $31,929.94 and the
RCV of the damage to other structures as $7,792.46.[7]  Accounting for
coverage limits, deductibles, and depreciation, Hodge calculated plaintiff's
net claims to be $31,929.94 for damage to the dwelling and $3,340.00 for
damage to other structures.[8]  On October 15, 2021, Allied Trust sent a letter

---

[4]    R. Doc. 21-4.
[5]    The parties dispute whether the inspection occurred on September 9
       or September 12, 2021.  Paula Maisel, a claims adjuster employed by
       defendant, testified in an affidavit that the field adjuster inspected the
       property on September 12, 2021, with the insured present.  R. Doc. 21-3
       ¶ 5.   But plaintiff testified in an affidavit that the field adjuster
       inspected her property on September 9, 2021.  R. Doc. 28-1 ¶ 3.  The
       field adjuster identified the "initial site meeting" date as September 9,
       2021, in his loss report and refers to multiple "inspections," R. Doc.
       21-5 at 2, and a photo sheet capturing damage to the premises lists that
       the field adjuster took the photos on September 12, 2021, *see* R. Doc.
       21-7.
[6]    R. Doc. 21-6.
[7]    *Id*. at 14.
[8]    *Id*.

to plaintiff stating that it would pay plaintiff $31,929.94 and $3,340.00 on her claims.[9]  The letter additionally directed plaintiff to "please prepare a detailed inventory of the items being claimed," if she had "any personal property items being claimed," and to "please save all receipts and documentation for review," if she had "any additional living expenses being claimed."[10]  Allied Trust issued checks for $31,929.94 and $3,340.00 on October 18, 2021.[11]

Hodge additionally drafted a general loss report.  The parties both assert that Hodge issued this loss report along with the estimate and the photo sheet showing the condition of the property during his initial inspection of plaintiff's property in September 2021.[12]  The loss report recites that the property was inspected on September 10, 2021, and that Hodge's estimate was completed on October 14, 2021.  But the date on the last page of the unsigned report is November 2, 2021, several weeks after Allied Trust issued its initial payment to plaintiff.[13]  The general loss report identified the

---

[9]    R. Doc. 21-8.

[10]   *Id.*

[11]   R. Doc. 21-9.

[12]   *See* R. Doc. 28-2 ¶ 3; *see also* R. Doc. 21-3 ¶ 5 (affidavit of claims adjuster testifying that the "report and estimate were issued along with a photo sheet showing the condition of the property on September 12, 2021").

[13]   R. Doc. 21-5 at 5.

RCV of the damage to the principal dwelling as $46,448.73 and the RCV of the damage to other structures as $8,577.27.[14] Accounting for coverage limits, deductibles, and depreciation, Hodge calculated the net claims to be $44,668.73 for damage to the dwelling and $3,340.00 for damage to other structures.[15] Hodge therefore "recommend[ed] payment to insured" in the total amount of $48,008.73 in the general loss report,[16] which was $12,738.79 more than what was initially tendered to the plaintiff based on the figure in the claims estimate. The loss report estimate reflects that no previous payments to plaintiff had been made which suggests the $48,008.73 amount was Hodge's original estimate on October 14, 2021. Neither party addresses the discrepancy between Hodge's general loss report and claims estimate. But the general loss report, unlike the claims estimate, includes a recommendation for a full roof replacement.[17] On December 10, 2021, Allied Trust issued a supplemental payment of $13,518.79 to plaintiff for a full roof replacement.[18] Neither party identifies whether this supplemental payment was related to the higher estimate in the general loss report.

---

[14]    *Id.*
[15]    *Id.*
[16]    *Id.*
[17]    *Id.* at 5.
[18]    R. Doc. 21-3 ¶ 7; *see also* R. Doc. 21-9 at 2.

On January 25, 2022, Allied Trust received a water mitigation and tear out estimate of $31,056.67 from Allstar Restoration and Reconstruction, along with photos of the plaintiff's gutted-out home.[19]  On February 2, 2022, plaintiff's counsel issued a formal demand letter to Allied Trust to tender further payment,[20] along with a repair estimate dated November 30, 2021, from a public adjuster, which calculated a total RCV of incurred damage at $141,659.65, consisting of $125,493.26 in damage to the dwelling and $16,166.39 in damage to other structures.[21]  Allied Trust partially disputed the public adjuster's estimate, but issued a settlement letter on February 8, 2022, which provided a second supplemental payment of $80,044.53 and $31,056.67 for the Allstar water mitigation and tear out estimate.[22]

On April 8, 2022, plaintiff submitted a list of her personal belongings damaged in the hurricane with a calculated RCV of $58,069.30.[23]  Allied Trust tendered plaintiff the coverage limit of $50,100 for personal belongings on April 12, 2022.[24] Allied Trust has not made any ALE payments to plaintiff.[25]  Shortly after plaintiff reported her claim, she contacted Allied

---

[19]    *See* R. Doc. 21-11.
[20]    *See* R. Doc. 21-12.
[21]    *See* R. Doc. 21-13.
[22]    *See* R. Doc. 21-14.
[23]    *See* R. Doc. 21-17.
[24]    *See* R. Doc. 21-18.
[25]    R. Doc. 28-1 ¶ 8; R. Doc. 21-3 ¶ 16.

Trust to report that she had acquired a camper as a temporary residence after the hurricane.[26]  But the parties dispute whether Allied Trust denied her coverage or whether plaintiff failed to provide adequate information to warrant payment.  In an affidavit, plaintiff stated that Allied Trust denied her request for payment as reimbursement for the camper she purchased, but instead offered her only a hotel room that was located approximately 3.5 hours from her property, which would have prevented her from getting to work.[27]  But a claims adjuster at Allied Trust testified that although plaintiff informed Allied Trust that she was renting a camper, she told their vendor, ALE Solutions, that no assistance was required, when she was later contacted.[28]  The claims adjuster further testified that neither plaintiff nor her counsel had provided Allied Trust with a rental contract, receipts, or any proof that the camper was rented for any length of time, despite Allied Trust's requests for the information.[29]

Plaintiff filed her petition for damages in state court on August 28, 2023, and alleged that Allied Trust breached its contract of insurance and handled her claims in bad faith, violating La. Rev. Stats. §§ 22:1892 and

---

[26]    R. Doc. 28-1 ¶ 7; R. Doc. 21-3 ¶ 16.
[27]    R. Doc. 28-1 ¶ 8.
[28]    R. Doc. 21-3 ¶ 16.
[29]    *Id.*

22:1973.[30]   Defendant removed the action to this Court on December 1, 2023.[31]

Defendant now moves for partial summary judgment on plaintiff's bad faith claims.[32]  Defendant argues that it timely handled plaintiff's insurance claims and did not act in an arbitrary or capricious manner when doing so. Plaintiff opposes the motion, asserting that there is a genuine issue of material fact about the timeliness and sufficiency of Allied Trust's initial payment, the timeliness of Allied Trust's payment for damage to her personal belongings, and the lack of any payment by Allied Trust for her additional living expenses.  The Court considers the motion below.

## II.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence

---

[30]    R. Doc. 1-1.
[31]    R. Doc. 1.
[32]    R. Doc. 21.

in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075 (noting that the moving party's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence" (citations omitted)).  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an

essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See id.* at 324.  The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for resolution.  *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.   DISCUSSION

This dispute was removed to this Court based on diversity jurisdiction under 28 U.S.C. § 1332.[33]  When jurisdiction is based on diversity, the Court applies the substantive law of the forum state.  *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014).

---

[33]    R. Doc. 1.

Louisiana Revised Statute Sections 22:1892 and 22:1973 govern bad faith insurance claims under Louisiana law.[34]  "The purpose of these penalty statutes is to 'provide remedies to insureds whose insurance claims are improperly handled or to whom payment is unreasonably delayed.'"  *Bourg v. Safeway Ins. Co. of La.*, 300 So. 3d 881, 888-89 (La. App. 1 Cir. 2020) (quoting *Lee v. Sapp*, 234 So. 3d 122, 128 (La. App. 4 Cir. 2017)).

Under Section 22:1892, a claimant is entitled to penalties if, after satisfactory proof of loss, the insurer fails to pay a claim within thirty days, and the failure is deemed "arbitrary, capricious, or without probable cause." La. Rev. Stat. § 22:1892(B)(1)(a) (2023).  To establish a cause of action under Section 22:1982, a claimant must show that "(1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary,

---

[34]    La. Rev. Stat. § 22:1973 was repealed, and La. Rev. Stat. § 22:1892 was significantly amended, by Act No. 3 of the 2024 Regular Session, effective July 1, 2024.  *See* Act No. 3 of the 2024 Regular Session, Senate Bill No. 232.  However, in Louisiana, "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only." La. Civ. Code art. 6; *see Bourgeois v. A.P. Green Indus., Inc.*, 783 So. 2d 1251, 1257 (La. 2001).  Because there was no legislative expression in the Act to make it retroactively applicable, and because Section 22:1973 is a substantive law, the Court makes an *Erie* guess that its repeal applies prospectively.  As this case was filed in August 2022 and removed in January 2023, Section 22:1973 and the prior version of Section 22:1982 still apply.

capricious, or without probable cause." *Guillory v. Lee*, 16 So. 3d 1104, 1126 (La. 2009).

Section 22:1973 separately imposes a duty of good faith and fair dealing on an insurer to "adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both." La. Rev. Stat. § 22:1973(A) (2023). The statute subjects the insurer to damages and additional penalties if (1) it receives satisfactory proof of loss, (2) it fails to pay a claim within sixty days after receiving the proof, and (3) the failure was arbitrary, capricious, or without probable cause. La. Rev. Stat. § 22:1973(B)-(C) (2023).

Satisfactory proof of loss is proof that is "sufficient to fully apprise the insurer of the insured's claims." *Louisiana Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1119 (La. 2008) (quoting *McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1089 (La. 1985)); *see Katie Realty, Ltd. v. Louisiana Citizens Prop. Ins. Corp.*, 100 So. 3d 324, 331 (La. 2012) ("[P]roof of loss necessarily means proof sufficient to establish the amount due on an insurance claim."). It "is a 'flexible requirement to advise an insurer of the facts of the claim,'" and "need not 'be in any formal style.'" *La. Bag. Co.*, 999 So. 2d at 1119 (quoting *Sevier v. U.S. Fid. & Guar. Co.*, 497 So. 2d 1380, 1384 (La. 1986)). But it "must include 'the extent of damages,' and the plaintiff bears the

'burden of proving the insurer received satisfactory proof of loss.'" *Korbel v. Lexington Ins. Co.*, 308 F. App'x 800, 803 (5th Cir. 2009) (quoting *Reed v. State Farm Mut. Ins. Co.*, 857 So. 2d 1012, 1019 (La. 2003)).    Courts therefore focus their inquiry on "notice," and whether the insurer has received sufficient information to act on a claim. *Cotton v. Certain Underwriters at Lloyd's of London*, 831 F.3d 592, 596 (5th Cir. 2016). "Whether, and when, satisfactory proof of loss was received is a question of fact." *Korbel*, 308 F. App'x at 803 (citation omitted).    Louisiana courts interpret "arbitrary, capricious, or without probable cause" to mean "vexatious," indicating a refusal to pay that is "unjustified" and "is not based on a good-faith defense." *Reed*, 857 So. 2d at 1021.    This analysis additionally "depends on the facts known to the insurer at the time of its action." *Id.*

Defendant argues that there is no evidence that Allied Trust acted in bad faith or in an arbitrary or capricious manner.[35]    In response, plaintiff asserts that Allied Trust's initial payment was inadequate and untimely,[36] that Allied Trust's payment for plaintiff's supplemental contents coverage was untimely,[37] and that Allied Trust failed to make any payment for

---

[35]    R. Doc. 21-2 at 9.
[36]    R. Doc. 28 at 9-10.
[37]    *Id.* at 14.

plaintiff's ALE coverage.[38]    The Court addresses each of plaintiff's contentions in turn.

### A. Initial Payments

The parties agree that the field adjuster completed and sent his initial claims estimate to Allied Trust on October 14, 2021,[39] that Allied Trust provided initial payments of $31,929.94 and $3,340.00 to plaintiff on October 18, 2021,[40] that the General Loss Report is dated November 2, 2021,[41] and that Allied Trust issued a supplemental payment (the "first supplemental payment") of $13,518.79 to plaintiff on December 10, 2021.[42]

Plaintiff contends that the initial payments were inadequate because it was less than the $48,008.73 recommended in the field adjuster's general loss report,[43] and substantially less than the total indemnity Allied Trust ultimately issued for the claim.[44]    Plaintiff additionally asserts that this payment was untimely because it occurred thirty-nine days after the field adjuster first inspected her property on September 9, 2021, which she argues

---

[38]    *Id.* at 12-13.
[39]    R. Doc. 21-5 at 1.
[40]    *See* R. Doc.  21-9; *see also* R. Docs. 28-2 ¶ 4 & 21-3 ¶ 6 ("The checks were printed and sent to plaintiff on October 18, 2021.").
[41]    R. Doc. 21-5 at 5.
[42]    R. Doc. 21-3 ¶ 7.
[43]    R. Doc. 21-5 at 6.
[44]    *See* 21-15.

constituted a satisfactory proof of loss.[45]  The Court finds there to be
questions of fact as to the timeliness and adequacy of Allied Trust's initial
and first supplemental payments.[46]

Courts find an insurer has received satisfactory proof of loss only when
they have been fully apprised of plaintiff's claim.  *See Korbel*, 308 F. App'x
at 803.  A field adjuster's inspection of damaged property will sometimes
constitute satisfactory proof of loss when the scope of the claim is facially
apparent.  *See id.* at 804 ("[A]n insurer can, at least in some cases, obtain

---

[45]    R. Doc. 28 at 9-10.

[46]    The Court notes that plaintiff's argument that these payments were
inadequate because they were substantially less than the total
indemnity Allied Trust ultimately issued for the claim is meritless.  *See,
e.g.*, *Gentilly, LLC v. State Farm Fire and Cas. Co.*, No. 23-262,
2024 WL 5246606, at *6 (E.D. La. Dec. 30, 2024) (finding that a
"recent payment of over $370,000" does not demonstrate that insurer
"under-scoped the damage at the outset of the claim" or that the initial
payment "amount[ed] to bad faith"); *2715 Marietta, LLC v. Axis
Surplus Ins. Co.*, No. 22-3292, 2024 WL 493300, at *5 (E.D. La. Feb.
8, 2024) ("[T]he competing expert opinions regarding the cause of the
damage and amount of Plaintiff's alleged loss go to the merits of
Plaintiff's underlying insurance claim, not the bad-faith claim."); *see
also Reed*, 857 So. 2d at 1023 (holding that it was "immaterial" to
plaintiff's bad faith claim that insurer later paid the full policy limit
because its "initial amount of tender was not unreasonable" based on
the "records available at that time"); *cf. Louisiana Bag Co.*, 999 So. 2d
at 1122 ("While [insurer] may have arguably been justified in
withholding payment early on, [it] was not justified in continuing to
withhold payment after its own experts rendered reports showing
damage well in excess of the policy limits for the stock and building
losses.").

satisfactory proof of loss as a result of its adjuster's inspection of the damaged property."); *Paul v. Nat. Am. Ins. Co.*, 361 So. 2d 1281, 1284 (La. App. 1 Cir. 1978) (insurer was "fully apprised of the claim through [its adjuster's] personal investigation of the premises and the list of contents furnished by Insured").  But often, when the damage and necessary repair are not immediately evident, courts will instead find an insurer to have received satisfactory proof of loss when the field adjuster has finalized his or her report.  *See, e.g., First Baptist Church of Iowa, La. v. Church Mut. Ins. Co., S.I.*, 105 F.4th 775, 796 (5th Cir. 2024) (affirming finding that insurer received satisfactory proof of loss on the date of the adjuster's first report); *Gentilly, LLC*, 2024 WL 5246606, at *4 (finding that tender issued the same day as the adjuster's report was timely, despite adjuster finalizing estimate over six weeks after his initial inspection of the property).

The record is unclear as to when the General Loss Report was first sent to Allied Trust, and, if multiple versions were sent, when Allied Trust received a version with the following roofing observations:

> 30 year laminated shingle 8 years of age, 2 layers 15 pound felt, 5/12 pitch. Drip edge noted.  Front slope- 50+ damage[d] shingles, Right slope- 50+ damaged shingles, Rear slope- 50+ damaged shingles, Left slope- 50+ damaged shingles.  [P]ipe jack-2, Satellite dish-1, Exhaust vent-1.  My estimate will reflect a full roof replacement of items mentioned above.[47]

---

[47]    R. Doc. 21-5 at 2.

Although the General Loss Report was dated November 2, 2021, the estimate of loss lists no prior payments to the insured and calculates the claim payable as $48,008.73.[48]  And the loss report states that the estimate was completed on October 14, 2021.  This timeframe suggests Hodge's October 14, 2021 recommendation was $48,008.73, not the $35,269.94 paid on October 18, 2021.[49]  This discrepancy creates a question of when the general loss report was transmitted to Allied Trust: before the October 18, 2021 payments, when the claim payable and prior payments information would be accurate, or, after October 18, 2021 as would be the case if it was sent on November 2, 2021.  Moreover, the field adjuster prepared and submitted to Allied Trust, a photo sheet with photographs taken on September 12, 2021.  The photo sheet includes numerous photos of the roof.[50]  A series of photos displays the roof, with a large visible tarp covering much of it, from various angles.[51]  Additional photo captions provide the following characteristics: "30 year laminated," "1 layer felt," "5/12 pitch," and, "[s]hingles ripped during layer test."[52]  These captions align with the

---

[48]    Id. at 6.
[49]    R. Doc. 21-9.
[50]    R. Doc. 21-7.
[51]    Id. at 1, 4-7.
[52]    Id. at 1-3.

roof assessment provided in the general loss report. Because there is a question of what information Allied Trust had at the time of sending the first checks, whether those checks were adequate remains a question.

Even if Allied Trust did not receive satisfactory proof of loss for the full roof until November 2, 2021, the first supplemental payment for the roof replacement was not made until December 10, 2021, more than 30-days after the general loss report was signed by the field adjuster. The Court finds there is a material issue of fact as to the timeliness of this payment.

For the foregoing reasons, the Court denies defendant's motion for summary judgment on plaintiff's bad faith claims as they relate to the payments for the dwelling coverage.

### B. Contents Coverage

Plaintiff additionally asserts that Allied Trust failed to timely issue payment for damage to her personal belongings. Allied Trust received a list of the contents of her property damaged in the hurricane on April 8, 2022,[53] and issued full payment to the coverage limit on April 12, 2022.[54] But plaintiff argues that this payment was late because defendant had received satisfactory proof of loss of her personal belongings claim at the first

---

[53]    R. Doc. 21-17.
[54]    R. Doc. 21-18.

inspection on September 9, 2021.[55]  This argument is both factually and legally incorrect.

First, the field adjuster's inspection did not provide satisfactory proof of loss of plaintiff's contents claim.  Although plaintiff argues that the field adjuster's photographs provided Allied Trust with "visual proof" of damage to her personal belongings,[56] the photo sheet submitted by the field adjuster exclusively contained images of close-up structural damage or rooms that have been emptied of possessions.[57]  Plaintiff's contention that Allied Trust could determine the damage to her personal property from the photographs is specious.

Second, Allied Trust received satisfactory proof of loss only when it received an inventory of her damaged personal property.  Courts applying Louisiana law find a list of damaged belongings to be necessary to fully apprise an insurer of a contents claim.  *See, e.g.*, *Grilleta v. Lexington Ins. Co.*, 558 F.3d 359, 367 (5th Cir. 2009) (affirming finding that plaintiffs who had "never officially submitted" a "supplemental contents list" to insurer had not provided satisfactory proof of loss); *Yount v. Lafayette Ins. Co.*, 4 So. 3d 162, 172 (La. App. 4 Cir. 2009) (finding that plaintiff "did not provide

---

[55]    R. Doc. 28 at 3, 12-13.

[56]    *Id.*

[57]    *See* R. Doc. 21-7.

satisfactory proof of loss" when the "record is absent any evidence [plaintiff] took measures to provide to the insurance carrier an itemization of damaged articles (i.e., furniture, office equipment)" necessary to "fully apprise the insurance carrier of the claim and the extent of damages"). Indeed, plaintiff directly cites the Louisiana First Circuit Court of Appeal's finding in *Paul v. National American Insurance Company*, 361 So.2d 1281 (La. App. 1 Cir. 1978), that an insurer was "fully apprised" of a claim by the adjuster's "personal investigation of the premises and the list of contents furnished by Insured." *Id.* at 1284 (emphasis added). Further, Allied Trust informed plaintiff that she must "prepare a detailed inventory of the items being claimed" if she intended to claim any "personal property items" in its initial claim settlement.[58] Allied Trust therefore timely paid plaintiff's personal property claim on April 12, 2022, four days after it received plaintiff's list. Accordingly, the Court grants defendant's motion for summary judgment on plaintiff's bad faith claims as they relate to contents coverage.

### C. Additional Living Expenses

Lastly, plaintiff argues that Allied Trust acted in bad faith by failing to provide any payment for her additional living expenses. Plaintiff testified that Allied Trust denied her request for reimbursement payment after she

---

[58]    R. Doc. 21-6 at 2.

informed it that she purchased a camper. [59]   But she fails to provide any contracts, payments, invoices, or receipts that she submitted to Allied Trust in support of her claim.[60]   Courts applying Louisiana law find that an insurer has received satisfactory proof of loss of claimant's additional living expenses only when it has received evidence of the amount of expenses incurred.  *See, e.g.*, *Duplessy v. Lexington Ins. Co.* No. 7-8816, 2009 WL 10687547, at \*6 (E.D. La. June 17, 2009) (finding that plaintiff could not recover additional living expenses when the "only evidence" he submitted was an "affidavit" containing "general statements that he evacuated to Memphis, Tennessee, for Hurricane Katrina" and that "he rented a property" for "six months" on his return); *Khalimsky v. Liberty Mut. Fire Ins. Co.*, No. 7-8959, 2009 WL 982641, at \*4 (E.D. La. Apr. 13, 2009) (finding that plaintiffs failed to show "additional living expenses" when they "have provided no receipts, no credit card statements, no affidavits from hoteliers or other persons whom they paid out of their own funds after Hurricane Katrina").  Plaintiff fails to show that Allied Trust was fully apprised of her claim for additional living expenses and therefore cannot show that Allied Trust's non-payment of her ALE claim constituted bad faith.

---

[59]    R. Doc. 28-1 ¶ 8.

[60]    R. Doc. 28-1 ¶ 8; *see* R. Doc. 21-1 ¶ 16.

Plaintiff fails to provide sufficient evidence indicating that Allied Trust violated La. Rev. Stats. §§ 22:1892 and 22:1973 when handling her claims to create a genuine issue of material fact. Accordingly, the Court grants defendant's motion for summary judgment on plaintiff's bad faith claims as they relate to additional living expenses.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART defendant's motion for partial summary judgment on plaintiff's bad faith claims.  The Court grants defendant's motion as to the contents coverage and additional living expenses, and denies the motion as to the dwelling coverage.  The Court orders plaintiff's bad faith claims related to contents coverage and additional living expenses DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this  14th  day of July, 2025.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE